DUTCHESS COUNTY MUTUAL INSURANCE COMPANY V. HACHFIELD, appellant.

*Stolen bonds — bona fide holder — negotiability.*

In an action to recover negotiable bonds which had been stolen from plaintiff, the defendants requested the court to charge that if they " purchased the bonds in the open market for full value, and in the usual course of business, without notice or suspicion, they were not bound to make a close and critical examination in order to escape the imputation of bad faith in the purchase." The court refused so to charge, and left it to the jury to say how much of an examination defendants ought to have made. *Held*, error.

A bond payable in blank, with the addition, following the blank, of the words " his executors, administrators or assigns," is negotiable.

APPEAL by defendants from a judgment in favor of plaintiff, and also from an order denying a motion for a new trial. The action was brought by the Dutchess County Mutual Insurance Company against Albert Hachfield and others, constituting the firm of Hachfield & Co.

The opinion states the case.

*J. T. Kilbreth, Morris & Billings* and *M. H. Cardozo,* for appellants, argued that defendants were not bound to make a critical examination. *Welch* v. *Sage,* 47 N. Y. 146 ; *Magee* v. *Badger,* 34 id. 247 ; *Belmont Branch .Bank* v. *Hoge,* 35 id. 65 ; *Birdsall* v. *Russell,* 29 id. 220 ; *Lord* v. *Wilkinson,* 56 Barb. 595 ; *Goodman* v. *Simonds,* 20 How. (U. S.) 365 ; *Goodman* v. *Harvey,* 4 Ad. & El. 870.

*Hammond & Stickney,* for respondent, cited Edw. on Bills, 310 ; *Steinhart* v. *Boker,* 34 Barb. 442 ; *Lord* v. *Wilkinson,* 56 id. 594 ; *Fulton Bank* v. *Phœnix Bank,* 1 Hall, 562 ; Chitty on Bills, 255– 260 ; 3 Phillips' Evidence, 159–162 ; 1 id. 820.

DANIELS, J. This action was brought to recover the possession of five bonds issued by the city of Poughkeepsie, for the sum of $1,000 each. They were payable in blank, with the addition following the blank, of the terms "his executors, administrators or assigns," etc. ; and these terms, following the space left for the insertion of the name of the payee or holder, were sufficient to render them negotiable under the mercantile law of the State, as it now seems to be settled. *Brainard* v. *N. Y. & Harlem R. R. Co.,* 25 N. Y. 496 ; *White* v. *Vermont & Mass. R. R. Co.,* 21 How. (U. S.) 575 ; *Michigan Bank* v. *Eldred,* 9 Wall. 544, 551–2.

The evidence showed that these bonds had been feloniously stolen from the plaintiff, their lawful owner, shortly before they were purchased by the defendants ; and that imposed the obligation upon them of proving, to the satisfaction of the jury, that their purchase was made for value and in good faith, before they could establish a title to the bonds superior to that of the plaintiff as the preceding owner. *Farmers' Bank* v. *Noxon,* 45 N. Y. 762. Where fraud or illegality in the negotiation of commercial paper is shown, the law presumes a want of consideration in the transfer. It supposes that "the original party not being able to sue upon the instrument himself, has handed it over to another to sue upon it

for his benefit. This presumption, so raised by the law, must be rebutted by the holder showing affirmatively that he gave value.

It is not quite correct to say that the *onus* of proving value is cast upon the plaintiff; but the plaintiff being presumed to stand in the shoes of the party from whom he took the instrument, and to be his agent for the purpose of carrying out the fraudulent or illegal intention, is bound to get rid of that presumption." *Fitch* v. *Jones*, 32 Eng. Law & Eq. 134, 137-8.

Proof was given by the defendants tending to overcome the presumption arising out of the circumstance that the stolen bonds were found in their possession, by showing that they were purchased by them for a valuable and adequate consideration, without notice of any infirmity in the title of their vendor; and it is upon the disposition which the court made at the trial of the questions arising upon this proof, that the main effort is made by the defendants' counsel to sustain their present appeal.

After the charge had been delivered to the jury, the defendants' counsel requested the court to instruct them, that if " Hachfield & Co. purchased these bonds in the open market for full value, and in the usual course of business, without notice or suspicion, they were not bound to make a close and critical examination in order to escape the imputation of bad faith in the purchase." The court declined to charge this proposition, and left it to the jury to say how much of an examination they were to make; and the defendants excepted to the refusal. This exception is the only one required to be considered in connection with the charge of the court; because the preceding request, though in the main correct, was finally coupled with an untenable proposition, and for that reason properly refused. The proposition presented by this exception seems to be faultless. For if the defendants did, as it contemplated, purchase the bonds in the open market for value, in the usual course of business, without notice or suspicion, then they were not bound to make either a close or critical examination either of the bonds or into their history in order to escape the imputation of bad faith in the purchase. The terms made use of did not complete or finish the idea pointed at by the words "notice" or "suspicion." But, as the whole controversy hinged upon the question whether the defendants' purchase was made in good faith, what was really intended by their use was clear and conspicuous. It was, in substance, without notice or suspicion of the robbery by which the

plaintiff was divested of their possession. That was, under the circumstances, their clear implication ; and, with that construction, the proposition which the court declined to charge was sound 'in all respects ; for it presented the case of a purchase for full value, in the ordinary course of business, without notice or suspicion of the robbery creating the infirmity of title ; and that was all which the law required to be established to protect the defendants as the owners of the bonds. Under those circumstances, if they had been submitted to, and found, as proved, by the jury, the defendants were not bound to make any examination or investigation whatever to escape the imputation of bad faith in their purchase of the bonds. For they were of themselves sufficient to show a purchase in good faith, for value and the usual course of business ; and the law requires no more than that in order to vest the buyer with the title to negotiable securities. *Welch* v. *Sage,* 47 N. Y. 143 ; *Belmont Branch of State Bank of Ohio* v. *Hoge,* 35 id. 65.

There was nothing in the charge which avoided the effect of the refusal to submit this proposition to the jury. That was still more unfavorable to the defendants' title, for it required them to satisfy the jury that the bonds were purchased by them in the ordinary course of business, " and that they did not procure them in such a shape as would put a prudent man upon inquiry ; " and that "they bought them and paid for them without reason to suppose that there was any thing wrong about them ; " " that where parties act in good faith in the purchase of securities in the open market, without any attending circumstances which would call for inquiry or put a party upon his guard, the purchase would be protected," etc. And it was further added : " If you find, from the evidence and the surrounding circumstances, that Hachfield & Co. bought these bonds in good faith, without any reason to suppose that Kendrick had wrongfully come into possession of them, then they are protected." These were the prominent portions of the charge, stating what the defendants were required to establish in order to succeed in their defense ; and they required too much of them, because it was clearly to be implied from them that a purchase for value and in good faith was insufficient in case there was enough shown to put the defendants upon inquiry, or upon their guard, or arouse their suspicions that the seller had wrongfully acquired possession of the bonds, while all that the law requires to protect the purchaser is that the purchase shall be for value, in good faith and in the ordinary

course of trade. *Welch* v. *Sage, supra; Goodman* v. *Simonds,* 20 How. (U. S.) 343. And these propositions were not corrected by the general statement, afterward made, that the defendants were to be protected if they bought the bonds in good faith, because the preceding qualifications of the general proposition were in no sense withdrawn or restricted.

The jury were left with the impression conveyed by the charge that, in addition to good faith in the purchase and value paid for the securities, the defendants were bound to satisfy them that it was made under circumstances that would not put a prudent man upon inquiry, or cause him to suppose there was any thing wrong, or put them upon their guard, or lead them to suppose that the bonds were not regular. To correct these qualifications, at least the proposition the court declined to charge was required. And its refusal must have been decisive with the jury, that a purchase for value in good faith and in the usual course of business, were not in themselves sufficient for the protection of the defendants.

A new trial cannot be ordered for misdirection in the charge, for the simple reason that it is not one of the grounds which, under the Code, can be considered in support of a motion made for that purpose upon the minutes of the court. Code, § 264. For that reason the effect of these directions is no otherwise before the court on the present appeal, than they are appropriate for consideration upon the effect of the refusal to charge as requested by the defendants. In that respect they have been examined to show that the proposition declined was not included in any thing which has been said. And as it had not previously been submitted to the jury, and was right and proper for their consideration, the court should have charged it when the request was made. The refusal to do so was error, and for that reason the judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

*Judgment reversed and new trial ordered.*